Filed 2/17/26  In re E.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>E.C.,<br><br>    Defendant and Appellant. | F089803<br><br>(Super. Ct. No. 24JL-00160A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Mason L. Brawley, Judge.

Jeffrey R. Wood, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and Tyrone Sandoval, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

-ooOoo-

Minor E.C. contends on appeal that the juvenile court's true finding that minor committed count 1 (Pen. Code, § 211;[1] second degree robbery) for the benefit of a criminal street gang pursuant to section 186.22, subdivision (b)(1)(A) must be reversed and the matter remanded because there is insufficient evidence of predicate offenses. The People agree, as do we. We reverse the court's true finding on the gang enhancement as to count 1 pursuant to section 186.22, subdivision (b)(1)(A) and remand the matter for resentencing. In all other respects, the court's order is affirmed.

## PROCEDURAL SUMMARY

On October 17, 2024, a juvenile wardship petition was filed in Merced County Superior Court, pursuant to Welfare & Institutions Code section 602, alleging minor committed second degree robbery (§ 211; count 1); accessory after the fact (resisting an officer) (§ 32; count 2); and resisting a peace officer (§ 148, subd. (a)(1); count 3). As to count 1, it was further alleged that minor committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)).

On October 23, 2024, the juvenile court held an arraignment hearing. Minor denied the allegations.

On February 19, 2025, the juvenile court held a jurisdiction hearing. The court found the allegations of the petition true.

On May 7, 2025, the juvenile court held a disposition hearing. The court adjudged minor a ward of the court and committed him to probation.

On May 9, 2025, minor filed a timely notice of appeal.

## FACTS

*Second Degree Robbery (Count 1; § 211)*

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

2.

On the afternoon of February 19, 2025, Wesley H. was walking with his wife, Sarah H., their two children, and their young nephew in an apartment complex, when a group of approximately six to 10 juveniles, including minor, approached him and asked if he smoked marijuana. Wesley testified that the juveniles all had masks on, but later stated only minor had a mask on, which he described as a black, pull-down mask with cut outs for his eyes and nose. Sarah testified minor was wearing a white mask across his face that he later took off. Wesley stated he told the group of juveniles that he did not smoke marijuana, but the group continued to follow him and repeated the question. Sarah testified that the juveniles were yelling " 'Wesley. Wesley. Come here. Do you remember us? Do you remember us? We're NFL we're MOB,' " and that she told Wesley to run.

Wesley testified that he told his nephew to go ahead of him. Then, one of the juveniles struck Wesley on the side of the head and said that Wesley was a gang member, stating, " 'You are a [c]rip,' " as Wesley moved Sarah out of the way. He stated the juveniles did not say anything to indicate they had any gang affiliation. He stated he tried to get away from the group, telling them "I don't bang," but that they kept saying, " 'Get him,' " so he went into a cover position. The group then kicked him repeatedly while he was on the ground, then ran after Sarah while one struck her, before the group ran back to the apartments. During the attack, Wesley dropped his backpack.

Sarah testified that the group chased and caught Wesley and they "[a]ll started punching, kicking, [and] hitting [him]. [Minor] was the second person to put his hands on [Wesley]." She stated, "I physically [saw] [minor]. I [saw] him hitting and punching my husband. After the third incident, when they thought we had left—we were still there—they took off their masks. [Minor] still had on the red boxers, the blue jeans, and white shoes." She testified, "I could see his eyes and his hair," even when he had the mask on, and that what she saw matched minor's eyes and hair at the time of the incident. She stated, "[Minor] punched my husband, kicked my husband, knocked the stuff out of

3.

my hands that I had, yelling for everyone else to jump in." Sarah testified minor then "put [Wesley's phone] in his pocket, started punching my husband, who was on the ground, like this, and stepping, with his feet, onto my husband," but that she saw another juvenile in the group take Wesley's backpack.

Wesley testified that when he got up, he found his backpack was missing with his cell phones, wallet and money. The attack lasted approximately five minutes. He testified minor was one of the juveniles he saw holding the items from his backpack that were taken during the attack. He testified that even though minor wore a mask during the attack, he could still see his eyes and nose, which were "pretty distinct." Sarah testified that she saw minor take off his mask in the parking lot after the attack.

Wesley stated the juveniles were wearing "normal wear," and not anything appearing gang related. Sarah testified that some of the juveniles in the group were wearing red, while some wore black, with face masks and jeans, and one wore a gray hoodie. She stated that, based on her experience from living in the area, wearing red signified relation to the "Bloods, Nortes" gang.

Wesley testified that after the juveniles left, he went to find his children, who had run to their friend's house, so he could take his family home from there. Sarah stated that a neighbor in the parking lot told them to get into her car and drove them away from the juveniles, and while in the car, she called 9-1-1. As they drove away, she saw the juveniles, including minor, jumping the fence. When Wesley got home, he called a law enforcement officer to see if he could retrieve his items and locate the group of juveniles who attacked him.

Merced Police Officer Jesus Gonzalez testified that he had approximately seven years of training and experience related to gang activity, including special training regarding identification of gang members, and had been involved in excess of 20 cases involving gang activities.

He stated that at approximately 3:30 p.m., on November 19, 2023, he responded to a call about the attack and met with Wesley and Sarah. Sarah told him the names of four juveniles she recognized during the attack and provided him with a photograph from her phone showing two of them. Gonzalez contacted a student resource officer and was able to obtain the juveniles' names and photographs.

Once Gonzalez obtained photographs of the juveniles, he showed them to Wesley, who was able to identify two of them as participants in the attack, one of whom was minor. The following day, he showed Sarah photographs of the juveniles. She identified minor from a photograph as a participant in the attack. Gonzalez testified that both Wesley and Sarah indicated they were "[one] hundred percent" sure about their identification of minor. Wesley testified on recross-examination that there "could be [doubt in his mind]" that minor was one of the participants since he was wearing the mask, but that all the features he could see at that time matched minor. He also stated minor had "been around [his] kids for quite some time. So I know the voice. I know … who he is." He testified that prior to the attack, minor had been to his house multiple times, interacting with him and his children.

After the attack, Wesley did not see minor and stayed close to his home. He stated his head hurt for a week or two after the attack and his right leg hurt, and he was still traumatized about leaving his home at the time of the jurisdiction hearing.

### Accessory After the Fact (Resisting a Peace Officer) (Count 2; § 32) and Resisting a Peace Officer (Count 3; § 148, subd. (a)(1))

Merced Police Officer Arnulfo Centeno testified that on October 15, 2024, he saw two subjects he recognized, with whom he had had prior gang-related contacts, outside a residence. Centeno attempted to arrest one of the subjects, Damian H., on a warrant. Minor was also at the residence.

When Damian attempted to hand his cell phone to another person, Rogelio C., outside the residence, against Centeno's directions, a fight broke out between Rogelio

and Centeno.  Minor then ran out of the residence and was one of several people surrounding Centeno and his partner while they were trying to arrest Rogelio.  When other officers arrived at the scene, minor and others ran into the residence.  Minor then helped hold the door of the residence shut to prevent the officers from forcing it open.  It took at least two officers to force the door open.  After the door was forced open, officers went inside and attempted to take minor into custody.

## DISCUSSION

Minor contends there is insufficient evidence to support the juvenile court's finding that he committed count 1 (second degree robbery) for the benefit of a criminal street gang, pursuant to section 186.22, subdivision (b)(1)(A).  The People agree, as do we.

### A.    Law

Pursuant to section 186.22, subdivision (b)(1)(A), the juvenile court may impose a sentencing enhancement for a felony committed "for the benefit of, at the direction of, or in association with any criminal street gang."  (§ 186.22, subd. (b)(1)(A).)

Pursuant to subdivision (f) of that section, a gang is defined as "an ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more enumerated [offenses], having a common name or common identifying sign or symbol, and whose members [individually or] collectively engage in, or have engaged in, a pattern of criminal gang activity."  (§ 186.22, subd. (f).)

Pursuant to subdivision (e)(1) of section 186.22, a " 'pattern of criminal gang activity' " is defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of, two or more [enumerated] offenses, provided at least one of these offenses occurred after the effective date of this chapter, and the last of those offenses occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been

6.

committed, the offenses were committed on separate occasions or by two or more members, the offense commonly benefited a criminal street gang, and the common benefit from the offenses is more than reputational….” (§ 186.22, subd. (e)(1).)

“The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses. [Citation.] We use the term ‘commission’ in this opinion to include the broader statutory inclusion of the ‘attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction’ of a predicate offense. ([§ 186.22, subd. (e)].)” (*People v. Valencia* (2021) 11 Cal.5th 818, 829 (*Valencia*).)

“[S]ection 186.22, subdivision (e) does not state that a predicate offense must be committed by a gang member. However, that requirement derives from the definition of a ‘ “criminal street gang,” ’ which includes proof that the gang’s ‘*members* individually or collectively engage in, or have engaged in, a pattern of criminal gang activity.’ ([§ 186.22, subd. (f)], italics added.) It follows, then, that the proof of a predicate offense must establish that a member of a defendant’s alleged gang was involved in its commission. Taken together the statutory scheme requires proof that gang members committed at least two predicate offenses within the statutory timeframe. Such proof will generally require evidence of who committed the crime and when they did so, as well as evidence of their gang membership and the nature of the crimes.” (*Valencia*, 11 Cal.5th at pp. 829–830, fn. omitted.)

We review “ ‘ “the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt” ’ ” when assessing a claim of sufficiency of evidence of a gang enhancement under section 186.22. (*People v. Shively* (2025) 111 Cal.App.5th 460, 468.) “While substantial evidence may consist of inferences, such inferences must be ‘a product of logic and reason’ and ‘must rest on the evidence’

[citation]; inferences that are the result of mere speculation or conjecture cannot support a finding." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

### B.    Analysis

Here, the parties agree, as do we, that there is insufficient evidence to support the juvenile court's true finding as to count 1 of the gang enhancement pursuant to section 186.22, subdivision (b)(1)(A) because the prosecution did not present evidence of predicate offenses, as required by section 186.22.

During the jurisdiction hearing, Sarah testified that some of the juveniles who attacked Wesley and took his belongings were wearing red, and that she believed wearing red was associated with the "Bloods" or "Nortes" gang. The prosecution then argued in closing argument that the juvenile court should find the gang enhancement allegation true because the robbery in count 1 was "clearly motivated by a desire to prove gang standings based on their red clothing on some of the persons present …. " Defense counsel argued, however, that "[a]s to the gang enhancement, that simply wasn't proven. They totally lacked—they have to show that there's a predicate … involved in the gang that commit specific crimes. There's no testimony of that. All we had was this one individual crime."

The juvenile court found the gang enhancement as to count 1 true, pursuant to section 186.22, subdivision (b)(1)(A), stating,

> "After hearing argument and evidence of counsel, I find [the prosecution] have proven their case beyond a reasonable doubt, and, therefore, find the allegation in the petition, [c]ount 1, that the minor violated … section 211, second-degree robbery, as a felony, with … [e]nhancement 1 to be true beyond a reasonable doubt."

However, the parties agree, as do we, that the prosecution failed to present evidence of predicate offenses, as required pursuant to section 186.22,

subdivisions (b)(1)(A), (e) and (f). (See *Valencia*, *supra*, 11 Cal.5th at p. 829.) Here, the testimony of Wesley and Sarah described the attack, the robbery of Wesley's backpack, and Wesley and Sarah's prior interactions with minor. Sarah also testified that during the attack, some of the juveniles wore red and that she believed wearing red signified a relation to the "Bloods" or "Nortes" gang. However, the prosecution did not present any evidence of predicate offenses, showing the alleged gang members individually or collectively engaged in a pattern of criminal gang activity, as defined by section 186.22, subdivisions (e)(1) and (f). (See § 186.22, subds. (e)(1) & (f).) Accordingly, as the parties agree, because the prosecution did not present proof of predicate offenses establishing the existence of a criminal street gang, the prosecution failed to prove minor committed the robbery in count 1 "for the benefit of, at the direction of, or in association with any criminal street gang," pursuant to section 186.22, subdivision (b)(1)(A). As there is insufficient evidence that minor committed the robbery for the benefit of a criminal street gang, we reverse the juvenile court's true finding on the gang enhancement pursuant to section 186.22, subdivision (b)(1)(A) and remand the matter for resentencing.

## DISPOSITION

The juvenile court's true finding on the section 186.22, subdivision (b)(1)(A) gang enhancement is reversed and the matter is remanded for resentencing. In all other respects, the court's order is affirmed.